IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WILLIAM MAY, *et al.*, | |
| Plaintiffs, | Civil No. 18-10311 (RBK/AMD) |
| v. | **OPINION** |
| ELK PIPELINE, INC., | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion (Doc. 30) to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). For the reasons detailed herein, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

This case stems from a labor dispute. Plaintiffs William May, John Cavallaro, Ryan Bogner, Leroy Henicks, and John Truman ("Plaintiffs") were employed by Defendant Elk Pipeline, Inc. ("Defendant") until they were laid off on or about January 2018. (Doc. 29 ("SAC") ¶¶7–11, 21.) During Plaintiffs' employment, Defendant was a signatory to a collective bargaining agreement ("CBA") with the International Association of Machinists and Aerospace Workers of America ("the Union"). (*Id*. ¶¶7, 12.) Each Plaintiff was a member of the collective bargaining unit covered under the CBA. (*Id*. ¶20.)

*Collective Bargaining Agreements*

1

A July 18, 2005 letter memorialized an agreement between the Union and Defendant that "grandfathered" employees—defined as employees as on payroll either on or prior to April 16, 2004—would have certain vacation and sick leave benefits.[1] (SAC ¶14.) On September 27, 2005, Defendant and the Union entered into a CBA effective from June 28, 2004 to February 15, 2010. (*Id*. ¶15.) This CBA was subsequently extended to remain in effect through February 14, 2015 when the Defendant and Union entered into a Memorandum of Agreement ("MoA"). (*Id.* ¶¶15, 17.)

The portion of the CBA most relevant here is Article X (Vacations). Article X, Section 6 states: "all employees with more than two (2) years of service with the company who are permanently laid-off shall receive pro-rated vacation pay." (SAC ¶16.) When the MoA extended the CBA, it added a provision stating that Defendant "will payout any 'grandfathered' employees for vacation time owed under the Agreement that was made during the 2005 negotiations as memorialized in the July 18, 2005 letter." (*Id.* ¶¶17–18.) The MoA further states that employees currently on the payroll will receive "proper vacation entitlement for 2011 and going forward during the term of this Agreement." (*Id.* ¶18.)

Plaintiffs contend that, once they were laid off in January 2018, they should have been compensated for their accrued, unused benefits which were earned over the years of their respective employment with Defendant. (*Id.* ¶¶20–30). Plaintiffs allege that these unused benefits include vacation time, sick days, and personal days under the terms of the CBA and the subsequent related agreements. (*Id.* ¶¶22, 28.) Specifically, May accrued three weeks of vacation, ten sick days, and two and one-half personal days; Cavallaro accrued two weeks of vacation, six sick days, and six personal days; Bogner accrued two weeks of vacation, eight sick days, and two and one-

---

[1] The SAC does not explicitly state whether Plaintiffs were on payroll with Defendant either on or prior to this date. Thus, it is unclear if Plaintiffs are claiming to be "grandfathered" employees under the 2005 letter.

half personal days; Henicks accrued two weeks of vacation, three sick days, and two personal days; and Truman accrued three weeks of vacation, ten sick days, and two and one-half personal days. (*Id.* ¶¶23–27.) Plaintiffs allege that Defendant refuses to compensate them for their respective accrued and unused benefits. (*Id.* ¶¶29–30.)

### *Union Issues*

Plaintiffs allege that, after Defendant declined to compensate them for their unused benefits, "certain bargaining unit members approached Mulinsky [the shop steward] and other Union representatives regarding [Defendant's] failure to pay such benefits." (SAC ¶34.) In response, "Mulinsky and other Union representatives were adamant that the members had no claim because (1) the employees did not work a day in 2018; and/or (2) the employer did not have to pay such benefits until the end of the 2018 calendar year." (*Id.* ¶35.) Based on this reasoning, the Union declined to file a grievance. (*Id*. ¶37.) Plaintiffs allege that the Union's refusal was without "any legitimate basis." (*Id.*)

Plaintiffs add that the Union had "wholly abandoned its duties and obligations to the bargaining unit members" back in January of 2017, and since that time the Union "failed to hold meetings, provide representation, or process any grievances." (*Id.* ¶¶32, 39.) At some point after Plaintiffs were laid off in January 2018, the Union "formally ceased its representation of the bargaining unit." (*Id*. ¶39.) Plaintiffs assert that at the time they were laid off, the Union was already aware that it "would cease being the exclusive representative of the bargaining unit." (*Id.* ¶40.) The collective bargaining unit is now represented by a different union. (*Id.* ¶41.)

### *Procedural History*

Plaintiffs filed suit against Defendant on June 8, 2018 (Doc. 1) alleging breach of contract and violation of Section 301 of the LMRA. They amended the Complaint on November 23, 2018

(Doc. 23). This Court dismissed the amended Complaint without prejudice on May 21, 2019, after finding that the amended Complaint did not properly allege that Plaintiffs attempted to file a grievance or that they were exempt from the relevant exhaustion requirement. (Doc. 27). Plaintiffs filed the operative Complaint, the Second Amended Complaint (Doc. 29), on June 3, 2019. Defendant now moves to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6).

## II.     LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at

680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Plaintiffs allege that, by failing to pay out accrued benefits, Defendant breached the CBA and violated Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. This is a "hybrid claim," so called because a plaintiff must allege both that (1) the employer breached the CBA, and (2) "that the union breached its duty of fair representation by failing to press the employee's grievance." *Luongo v. Village Supermarket, Inc.*, 261 F.Supp.3d 520 (D.N.J. June 2, 2017); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). Although a hybrid claim rests upon two causes of action – the first against the employer and the second against the Union – it does not require the employee to bring suit against both. *DelCostello,* 462 U.S. at 165. In fact, "the employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.* In this hybrid claim, Plaintiffs have sued only their employer.

In moving to dismiss, Defendant first argues that the SAC does not properly allege that Plaintiffs exhausted required grievance procedures before filing suit. (Doc. 30 ("Def. Mot.") at 1–2.) Defendant further argues that the SAC does not meet either prong of a hybrid claim. First, as to the Union prong, Defendant argues the SAC does not properly allege that the Union violated its duty of fair representation, because Plaintiffs do not claim that they personally approached the

Union about filing a grievance. (*Id*. at 3.) As for the employer prong, Defendant argues the SAC does not sufficiently allege that Defendant breached the CBA, as Plaintiffs cannot point to a CBA provision that entitles a terminated employee to receive a payout of all unused vacation, sick, and personal time throughout the entirety of their employment. (*Id*. at 2.)

### A. Exhaustion Requirement

In order to pursue a Section 301 hybrid claim, an employee must first show that he attempted "to exhaust any other grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello,* 462 U.S. at 163; *see also Carpenter v. Wawa*, Civ. No. 09-2768, 2009 WL 4756258, at *3 (E.D. Pa. Dec. 3, 2009) ("It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract.")

The CBA here "sets forth a detailed, mandatory grievance and arbitration procedure." (Def. Mot. at 5.) This procedure mandates that any "grievance between the Company and Union or between the employee and the Company shall first be presented by the Shop Steward to the General Manager or his designee in writing within ten (10) working days of the occurrence." (*Id*. at 6.) Under this provision, Defendant contends that Plaintiffs' required first step would be to approach Mulinsky, the shop steward. (*Id*. at 10–13.) Defendant argues the SAC does not allege facts showing Plaintiffs attempted to exhaust this grievance procedure, because the SAC states only that "certain bargaining unit members approached Mulinsky," rather than alleging that Plaintiffs themselves approached Mulinsky. (*Id*.) Defendant notes that the SAC never alleges that Plaintiffs themselves approached any other Union personnel to initiate the grievance process. (*Id*. at 7.)

In response, Plaintiffs argue that the issue of which bargaining unit members approached Mulinsky and other Union representatives is "an issue of fact which must be resolved in

6

discovery." (Doc. 31 ("Pl. Resp.") at 13.) Plaintiffs add that, even if they did not individually contact Mulinsky, "the grievance exhaustion requirement is nonsensical in situations where several bargaining unit members were wronged by their employer." (*Id.* at 14.) Plaintiffs argue that whether or not they individually approached Mulinsky, due to Mulinsky and the Union's refusal to pursue a grievance on behalf of other bargaining members, "further exhaustion of grievance or internal union procedures would have been futile." (*Id.* at 15.)

Plaintiffs' argument is unpersuasive. The SAC never alleges that Plaintiffs themselves approached Mulinsky, much less that Plaintiffs ever sought to exhaust other internal union remedies before filing suit. Even if a union member has been "mistreated by his bargaining representative, he must also avail himself of his intra-union remedies before turning to the courts for relief." *Pawlak v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., Local Union No. 764*, 444 F. Supp. 807, 810 (M.D. Pa. 1977), *aff'd*, 571 F.2d 572 (3d Cir. 1978). If there is a manner by which the mistreatment or mishandling of a grievance can be challenged, the employee must avail himself of that process. *Kush v. United Food & Commercial Workers Union Local 152,* Civ. No. 12-2120, 2013 WL 2096626, at *4 (D.N.J. May 14, 2013).

Moreover, allegations of a plaintiff's attempt to exhaust union remedies must be "substantiated by facts that indicate what procedures the [union member] attempted to follow." *Rehm v. Quaker Oats Co.*, 478 F. Supp. 619, 620 (M.D. Pa. 1979) (finding that "[e]ven if the Local Union officers did not act on Plaintiff's request, he has failed to allege that he tried to pursue any further remedy, or that none was available. Therefore . . . the Complaint fails to allege the requisite complete exhaustion of internal Union remedies, nor does it allege that all efforts to pursue such procedures have been frustrated.").

Plaintiffs here never allege that they personally sought to file a grievance, or that they attempted exhaustion of any intra-union remedies before turning to this Court for relief. *Pawlak*, 444 F. Supp. at 810. This Court dismissed the previous version of Plaintiffs' Complaint in part because it failed to allege that Plaintiffs attempted to file a grievance. (Doc. 27.) The SAC similarly still falls short of alleging that Plaintiffs attempted to file a grievance or exhaust internal union remedies. It fails to allege any facts suggesting Plaintiffs made an effort to pursue any other avenues of relief beyond simply approaching Mulinsky and other Union representatives. (SAC ¶38.) Thus, the Court finds the SAC fails to plead facts showing that Plaintiffs met the exhaustion requirement.

i. **Exceptions to Exhaustion Requirement**

Plaintiffs alternatively argue that they are "excused from the exhaustion requirement as the Union had the sole ability to pursue a grievance in this matter," but "wrongfully refused to file a grievance." (Pl. Resp. at 16.)

In determining whether to excuse the LMRA's mandatory exhaustion requirement, the Supreme Court has held that courts' discretion should be guided by three factors: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim;" (2) "whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301;" and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). The court may properly excuse the employee's failure to exhaust in the presence of any of these factors. *Keister v. PPL Corp.*, 253 F. Supp. 3d 760, 775 (M.D. Pa. 2015).

Here, Plaintiffs argue that the first two exceptions apply because the Union displayed a "hostile attitude toward Plaintiffs and the bargaining unit members which would deprive Plaintiffs of any hope for a fair hearing on the matter," and because "the pursuit of any internal union remedies would have been futile." (Pl. Resp. at 16.) As examples of hostility, Plaintiffs point out that the Union's conduct—such as not holding meetings—demonstrated "abandonment of the bargaining unit." (*Id.*)

Defendant contends that the SAC fails to plead that any Plaintiff personally approached Mulinsky or the Union representatives. (Doc. 33 ("Def. Reply") at 7.) Because the SAC does not allege that Plaintiffs ever personally attempted to file a grievance, Defendant claims that it could not logically have been hostile to Plaintiffs' grievance request, or have failed to reactivate a grievance. (*Id.*)

The Court agrees with Defendant's assertion that Plaintiffs cannot claim hostility in response to a grievance request where Plaintiffs have not even alleged facts showing that they attempted to file a grievance. Further, even if the Court were to read the SAC's vague reference to "certain bargaining unit members" as including Plaintiffs, the Union's response to the members who did approach them does not rise to the level of hostility required to excuse exhaustion. To establish a degree of hostility which would warrant excusal, the employee must "establish futility at every step of the relevant grievance procedure." *Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*, 830 F.2d 83, 86 (7th Cir. 1987); *see also Slight v. Local 12, Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 726 F. App'x 469, 472 (6th Cir. 2018) ("Union hostility toward members . . . excuses exhaustion only when it permeates each step of the internal appeals process."); *Seniority Research Grp. v. Chrysler Motor Corp.*, 976 F.2d 1185, 1189 (8th Cir. 1992) ("A showing of hostility at each level of the appeal process is necessary to establish this

exception to the exhaustion requirement."); *Gonzalez v. Al & John Inc.,* Civ. No. 06-6245, 2007 WL 1490407 at *3 (D.N.J. May 18, 2007) (finding that "[e]ven where it is argued that pursuit of contractual grievance procedures would be futile, the Supreme Court has made clear that plaintiff must still attempt to satisfy [the exhaustion] requirement, which can be done by making a showing that the employee made repeated complaints to the company and union officials").

In *Gonzalez v. Al & John Inc.,* 2007 WL 1490407, a plaintiff approached a union shop steward with a request, and the shop steward threatened to have the plaintiff arrested. The plaintiff also called the union president, but his call was never returned. *Id.* at *3. Based on these negative interactions, the plaintiff claimed excusal from the exhaustion requirement under the hostility exception. *Id.* The court held that "[t]hese statements, even if assumed to be true, do not provide a 'clear and positive showing' that exhaustion is, or would have been, futile." *Id.* Similarly here, "one unpleasant interchange between Plaintiff and the workplace shop steward do not allow this Court to conclude that [Plaintiffs'] inability to plead exhaustion in connection with the violations alleged in this suit should be excused." *Id.*

The SAC's bare allegations of futility do not excuse exhaustion under the first exception. The SAC only alleges that Mulinsky provided two reasons for why the grievance would not be processed, and that the Union refused to file the grievance "despite the insistence of bargaining unit members." (SAC ¶¶35, 37.) These allegations, particularly considering that Plaintiffs do not allege they personally experienced hostility, do not rise to the level of pervasive hostility that would prevent an employee from having any "hope to obtain a fair hearing." *Clayton*, 451 U.S. at 689. Furthermore, there are no allegations to suggest Plaintiffs made any other attempt to pursue a grievance. There are no allegations in the complaint that suggest Plaintiffs experienced hostility

through any and all stages of an internal appeals process, nor are there any allegations to suggest that an internal appeals process was even considered as an avenue of relief.

Moreover, the second exception does not apply. If internal remedies can reinstate a grievance, then excusal is not warranted. *Keiper v. United Auto. Workers' Union, Local 677*, 867 F. Supp. 298, 302 (E.D. Pa. 1994). The SAC does not allege that Plaintiffs attempted to pursue internal remedies, much less that these internal remedies were inadequate to afford relief. Absent allegations suggesting Plaintiffs attempted to use these procedures, but that the procedures could not provide relief or reinstate their grievance, excusal is not warranted under the second exception. *See Armstrong v. U.S. Postal Serv.*, Civ. No. 13-5567, 2014 WL 3345615, at *5 (D.N.J. July 8, 2014) (finding that the second exception to the LMRA exhaustion requirement did not apply where the plaintiff did not utilize internal grievance procedures before filing suit).

Plaintiffs thus fail to establish that they are excused from meeting the LMRA's mandatory exhaustion requirement. As Defendant's motion may be granted on this ground alone, the Court declines to address the parties' arguments regarding whether the Union breached its duty of fair representation or whether Defendant breached the CBA. *See Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 740 (3d Cir. 2009) (affirming a district court's dismissal of a plaintiff's LMRA claim on the ground that the plaintiff did not exhaust internal remedies).

## B. Leave to Amend

Plaintiffs also ask that, if Defendant's motion to dismiss is granted, they be given leave to amend their Complaint. (Pl. Resp. at 19–20.) "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The SAC's deficiency

here is curable, as it lies in its lack of factual assertions and specificity; as such, amendment would not necessarily be futile. Accordingly, Plaintiffs may file a motion to amend the complaint within 14 days of the date of the Order accompanying this Opinion.

## IV.     CONCLUSION

For the reasons detailed above, Defendant's motion to dismiss is granted without prejudice, and Plaintiffs may seek leave to file an amended complaint. An accompanying Order shall issue.


Dated: 2/3/2020                                                                           s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge