IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WILLIAM MAY, *et al.*, | : |
| Plaintiffs, | : Civil No. 18-10311 (RBK/AMD) |
| v. | : **OPINION** |
| ELK PIPELINE, INC., | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC") (Doc. 45). For the reasons detailed herein, Defendant's motion is **GRANTED**.

**I.   BACKGROUND**

This case stems from a labor dispute. Plaintiffs William May, John Cavallaro, Ryan Bogner, Leroy Henicks, and John Truman ("Plaintiffs") were employed by Defendant Elk Pipeline, Inc. ("Defendant") until they were laid off on or about January 2018. (Doc. 36, "TAC" ¶¶6–10, 20.) During Plaintiffs' employment, Defendant was a signatory to a collective bargaining agreement ("CBA") with the International Association of Machinists and Aerospace Workers of America ("the Union"). (*Id*. ¶¶6, 11.) Each Plaintiff was a member of the collective bargaining unit covered under the CBA. (*Id*. ¶19.)

1

*Collective Bargaining Agreements*

A July 18, 2005 letter memorialized an agreement between the Union and Defendant that "grandfathered" employees—defined as employees as on payroll either on or prior to April 16, 2004—would have certain vacation and sick leave benefits.[1] (*Id.* ¶13.) On September 27, 2005, Defendant and the Union entered into a CBA effective from June 28, 2004 to February 15, 2010. (*Id*. ¶14.) This CBA was subsequently extended to remain in effect through February 14, 2015 when the Defendant and Union entered into a Memorandum of Agreement ("MoA"). (*Id.* ¶¶14, 16.)

The portion of the CBA most relevant here is Article X (Vacations). Article X, Section 6 states the following: "all employees with more than two (2) [y]ears of service with the company who are permanently laid-off shall receive pro-rated vacation pay." (*Id.* ¶15.) When the MoA extended the CBA, it added a provision stating that Defendant "will payout any 'grandfathered' employees for vacation time owed under the Agreement that was made during the 2005 negotiations as memorialized in the July 18, 2005 letter." (*Id.* ¶¶17–18.) The MoA further states that employees currently on the payroll will receive "proper vacation entitlement for 2011 and going forward during the term of this Agreement." (*Id.* ¶17.)

Plaintiffs contend that, once they were laid off in January 2018, they should have been compensated for their accrued, unused benefits which were earned over the years of their respective employment with Defendant. (*Id.* ¶¶20–30). Plaintiffs allege that these unused benefits include vacation time, sick days, and personal days under the terms of the CBA and the subsequent related agreements. (*Id.* ¶¶21, 27.) Specifically, May accrued three weeks of vacation, ten sick days, and two and one-half personal days; Cavallaro accrued two weeks of vacation, six sick days,

---

[1] The TAC does not explicitly state whether Plaintiffs were on payroll with Defendant either on or prior to this date. Thus, it is unclear if Plaintiffs are claiming to be "grandfathered" employees under the 2005 letter.

and six personal days; Bogner accrued two weeks of vacation, eight sick days, and two and one-half personal days; Henicks accrued two weeks of vacation, three sick days, and two personal days; and Truman accrued three weeks of vacation, ten sick days, and two and one-half personal days. (*Id.* ¶¶22–26.) Plaintiffs allege that Defendant refuses to compensate them for their respective accrued and unused benefits. (*Id.* ¶¶28–29.)

### *Union Issues*

The Complaint alleges that the Union "failed to hold meetings, provide representation, or process any grievances since approximately January of 2017." (*Id.* ¶31.) Jeff Mulinsky was the designated shop steward of the Elk Pipeline bargaining unit. (*Id.* ¶32.) Plaintiffs assert that, after Defendant declined to compensate them for their unused benefits, "certain bargaining unit members, including May and Truman, approached certain Union representatives regarding Elk Pipeline's failure to pay such benefits." (*Id.* ¶33.) May allegedly "raised this matter of unpaid benefits to various individuals" (*id.* ¶34), including "Mulinsky, who refused to file a grievance or otherwise pursue this matter" (*id.* ¶35), "Union President Laurence Powell . . . who refused to file a grievance or otherwise pursue this matter" (*id.* ¶36), and "Company President Thomas Mecouch . . . who refused to pay any of the specific unpaid benefits" (*id.* ¶37.) Truman allegedly raised the matter with Union Business Agent Billy and President Powell. (*Id.* ¶38–39.) In response, "Mulinsky and other Union representatives were adamant that the members had no claim because (1) the employees did not work a day in 2018; and/or (2) the employer did not have to pay such benefits until the end of the 2018 calendar year." (*Id.* ¶40.) Based on this reasoning, the Union declined to file a grievance. (*Id.* ¶42.) Plaintiffs allege that the Union's refusal was without "any legitimate basis." (*Id.*)

Plaintiffs add that they have brought this matter to the attention of multiple union representatives and have exhausted all internal union remedies. (*Id.* ¶43.) Therefore, Plaintiffs believe that the "Union's conduct left Plaintiffs without the ability to pursue a grievance or otherwise seek to recover any unpaid benefits under the processes set forth in the CBA or by the Union." (*Id.* ¶44.) Plaintiffs also believe that the "refusal of Mulinsky, Billy, and/or Powell to investigate, grieve, and/or pursue this matter established that further exhaustion of internal remedies was futile." (*Id.* ¶45.)

### *Procedural History*

Plaintiffs filed suit against Defendant on June 8, 2018 (Doc. 1) alleging breach of contract and violation of Section 301 of the LMRA. They amended the Complaint on November 23, 2018 (Doc. 23). This Court dismissed the amended Complaint without prejudice on May 21, 2019, after finding that the amended Complaint did not properly allege that Plaintiffs attempted to file a grievance or that they were exempt from the relevant exhaustion requirement. (Doc. 27). Plaintiffs filed the Second Amended Complaint (Doc. 29) on June 3, 2019. The Court similarly dismissed the Second Amended Complaint on February 3, 2020, finding that Plaintiffs' Second Amended Complaint suffered from the same ailments as the amended Complaint. (Doc. 29.) Plaintiffs thereafter filed the operative Complaint, the Third Amended Complaint on February 18, 2020. (Doc. 36.)

## II.   LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*,

4

515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

### III. DISCUSSION

Plaintiffs allege that, by failing to pay out accrued benefits, Defendant breached the CBA and violated Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. This is a "hybrid claim," so called because a plaintiff must allege both that (1) the employer

5

breached the CBA, and (2) "that the union breached its duty of fair representation by failing to press the employee's grievance." *Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520 (D.N.J. June 2, 2017); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). Although a hybrid claim rests upon two causes of action—the first against the employer and the second against the Union—it does not require the employee to bring suit against both. *DelCostello,* 462 U.S. at 165. In fact, "the employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id*. In this hybrid claim, Plaintiffs have sued only their employer.

In moving to dismiss, Defendant makes two primary arguments: (1) the TAC does not properly allege that Plaintiffs Truman, Cavallaro, Bogner, or Henicks exhausted the required grievance procedures before filing suit and (2) the TAC does not meet either prong of a hybrid claim. (Doc. 30 ("Def. Mot.") at 1–2.) The Court addresses each argument in turn.

### A. Whether Plaintiffs Truman, Cavallaro, Bogner, and Henicks Exhausted Mandatory Grievance Procedures

In order to pursue a Section 301 hybrid claim, an employee must first show that he attempted "to exhaust any other grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello,* 462 U.S. at 163; *see also Carpenter v. Wawa*, Civ. No. 09-2768, 2009 WL 4756258, at *3 (E.D. Pa. Dec. 3, 2009) ("It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract.") The CBA here sets forth a detailed, mandatory grievance and arbitration procedure. This procedure mandates that any "grievance between the Company and Union or between the employee and the Company shall first be presented *by the Shop Steward* to the General Manager, or his designee in writing within ten (10) working days of the occurrence[.]" (Mot. at 13.)

Under this provision, Defendant contends that Plaintiffs' required first step would be to approach Mulinsky, the shop steward. (*Id*. at 10–13.) Defendant argues the TAC does not allege facts showing Plaintiffs Cavallaro, Bogner, or Henicks ever attempted to exhaust this grievance procedure, because the TAC states only that Plaintiff May approached Mulinsky, rather than alleging that each Plaintiff approached Mulinsky. (*Id.*) Further, Defendant notes that, although Plaintiff Truman raised the issue with Union Agent Billy, he also did not file a grievance with the Shop Steward. Therefore, Defendant argues that the Complaint should be dismissed as to Plaintiffs Cavallaro, Bogner, Henicks, and Truman.

In response, Plaintiffs make two arguments. First, Plaintiffs argue that Cavallaro, Bogner, Henicks, and Truman were not personally required to exhaust the mandatory procedures because Plaintiff May had already raised the issue the Shop Steward. Plaintiffs state that the Court can "infer" from the TAC that May and Truman were inquiring into the "collective issue of members' . . . unpaid benefits." (Opp. at 20.) Plaintiffs' argument is unpersuasive. As the Court had made clear in its prior Opinions on this issue, even if a union member has been "mistreated by his bargaining representative," each union member "must also avail himself of his intra-union remedies before turning to the courts for relief." *Pawlak v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., Local Union No. 764*, 444 F. Supp. 807, 810 (M.D. Pa. 1977), *aff'd*, 571 F.2d 572 (3d Cir. 1978). If there is a manner by which the mistreatment or mishandling of a grievance can be challenged, the employee must avail himself of that process. *Kush v. United Food & Commercial Workers Union Local 152,* Civ. No. 12-2120, 2013 WL 2096626, at *4 (D.N.J. May 14, 2013). Allegations of a plaintiff's attempt to exhaust union remedies must be "substantiated by facts that indicate what procedures the [union member] attempted to follow." *Rehm v. Quaker Oats Co.*, 478 F. Supp. 619, 620 (M.D. Pa. 1979) (finding that "[e]ven if the Local

7

Union officers did not act on Plaintiff's request, he has failed to allege that he tried to pursue any further remedy, or that none was available. Therefore . . . the Complaint fails to allege the requisite complete exhaustion of internal Union remedies, nor does it allege that all efforts to pursue such procedures have been frustrated.").

The Complaint, once again, fails to plead that Plaintiffs Cavallaro, Bogner, Truman, and Henicks followed the mandatory grievance procedure by raising the issue *with the Shop Steward*. Neither do Plaintiffs plead that Plaintiff May sought to file a grievance on behalf of any other collective bargaining unit member, including any other Plaintiff. Plaintiffs even concede that such allegations are missing from the TAC, and Plaintiffs' arguments that such an allegation can be "implied" is meritless. The Court finds no such allegation that would support an inference, and Plaintiffs cite no case law that would support a finding that an employee is exempt from mandatory grievance procedures by relying on the attempts of other employees. This Court dismissed the previous version of Plaintiffs' Complaint, in part, because it failed to allege that Plaintiffs attempted to file a grievance or exhaust internal union remedies. This Complaint again suffers from the same deficiencies; based on the allegations as pleaded, Plaintiffs' Cavallaro, Bogner, Truman, and Henicks failed to follow the CBA procedures. Thus, the Court finds the TAC fails to plead facts showing that Plaintiffs met the exhaustion requirement.

Plaintiffs again argue, as they did in their prior Opposition, that they attempted to exhaust the mandatory grievance procedures, and the Court should excuse any further failure to exhaust. (Opp. at 18.) In determining whether to excuse the LMRA's mandatory exhaustion requirement, the Supreme Court has held that courts' discretion should be guided by three factors: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim;" (2) "whether the internal union appeals procedures would be inadequate either to reactivate

the employee's grievance or to award him the full relief he seeks under § 301;" and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). The court may properly excuse the employee's failure to exhaust in the presence of any of these factors. *Keister v. PPL Corp.*, 253 F. Supp. 3d 760, 775 (M.D. Pa. 2015).

Here, Plaintiffs argue that the first two exceptions apply because "exhaustion would have been futile." (Opp. at 21.) Plaintiffs claim that they "attempted to raise this matter up the Union's chain of command, beginning with the shop steward." (Opp. at 21.) However, as this Court found, the only individual who raised the issue with the shop steward was Plaintiff May. Therefore, the other Plaintiffs' cannot claim that it would have been futile to exhaust internal union remedies when Plaintiffs have not even alleged facts showing that they attempted to file a grievance.

Furthermore, the Court finds that Plaintiffs' allegations fail to establish futility. To establish "futility" which would warrant excusal, the employee must "establish futility at every step of the relevant grievance procedure." *Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*, 830 F.2d 83, 86 (7th Cir. 1987); *Gonzalez v. Al & John Inc.,* Civ. No. 06-6245, 2007 WL 1490407 at *3 (D.N.J. May 18, 2007) (finding that "[e]ven where it is argued that pursuit of contractual grievance procedures would be futile, the Supreme Court has made clear that plaintiff must still attempt to satisfy [the exhaustion] requirement, which can be done by making a showing that the employee made repeated complaints to the company and union officials"). Plaintiffs allegations fall short of demonstrating such futility.

Plaintiffs essentially re-raise the same arguments that this Court has previously rejected in its prior Opinion regarding futility. (*See* Doc. 34 at 9–11.) The Court will not restate its prior

9

analysis here. Given the substantial similarity of the SAC's allegations of futility to the TAC's allegations of futility, the analysis is identical. The Court again finds that the TAC's bare allegations of futility do not excuse exhaustion. Plaintiffs Cavallaro, Bogner, Henicks, and Truman thus fail to establish that they are excused from meeting the LMRA's mandatory exhaustion requirement. Therefore, the Motion to Dismiss is **GRANTED** as to Plaintiffs Cavallaro, Bogner, Henicks, and Truman.

### B. Whether Plaintiffs State a Hybrid Claim Under Section 301

Because the Court determined that Plaintiffs Cavallaro, Bogner, Henicks, and Truman failed to exhaust administrative remedies, the Court considers the remainder of Defendant's arguments as to Plaintiff May only. As noted above, Plaintiff's claim is a hybrid Section 301 claim. To prevail on a Section 301 claim against their employer, Plaintiff's must prove (1) a claim of breach of the duty of fair representation against the union and then (2) a Section 301 cause of action against the employer for breach of the collective bargaining agreement. *See Guerrero v. 20 Hovensa LLC*, 259 Fed. Appx. 453, 459 (3d Cir. 2007). No liability attaches unless both prongs of the Section 301 hybrid claim are met. *See id.* Defendant argues that the Complaint still fails to state a claim because May cannot prove that (1) Elk Pipeline violated the CBA by not paying accrued but unused sick, vacation, and personal pay; and (2) the Union breached its duty of fair representation to the Plaintiffs by not pursuing a grievance. (Mot. at 2.)

First, the Court considers Defendant's argument regarding whether the Union breached its duty of fair representation. The duty of fair representation imposes an obligation upon unions to "serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (internal citation omitted). "Claims for breach of the duty of fair

representation are rarely sustained." *Brown v. Coilplus-Penn., Inc.*, No. 16-4746, 2017 WL 2672622, at *2 (E.D. Pa. June 21, 2017). Rather, as the Third Circuit has held, a worker advancing this theory must show that a union's treatment of him was "arbitrary, discriminatory, or in bad faith." *Masy v. N.J. Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir. 1986).

A union's conduct can be classified as arbitrary "only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). In other words, "in light of the factual and legal landscape at the time of [its] actions, the union's behavior [must be] so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953)). A breach of the duty of fair representation claim based on bad faith requires both an improper motive for the union activity, and "substantial evidence of fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 299 (1971) (internal quotation marks omitted).

Importantly, the Third Circuit has emphasized that "[t]he plaintiff must demonstrate more than mere ineptitude or negligence on the part of the union, and the fact that trained counsel would have avoided the error or pursued a different strategy is not enough." *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 238 (3d Cir. 1981). Similarly, a "breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 194. In line with this reasoning, courts have noted that "declining to pursue a grievance" as a union member might like is not "by itself a violation of the duty of fair representation." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). Rather, the plaintiff must prove that the union's decision was arbitrary or in bad faith. *Id.*

11

Plaintiff May pleads that the "Union acted in bad faith, and in a dishonest, arbitrary, and/or perfunctory fashion in failing to pursue a grievance." (TAC ¶51.) However, bare assertions of the state of mind required for the claim—here, "bad faith"—must be supported with subsidiary facts. *See Iqbal*, 556 U.S. at 680–83. Plaintiff May offers nothing to support the arbitrary or bad faith assertions apart from conclusory labels. May pleads that "[t]he Union's failure to grieve or otherwise represent Plaintiffs in obtaining their accrued benefits was a violation of the duty of fair representation." (TAC ¶59.) Further, Plaintiff May pleads that "[t]he Union's actions (or lack thereof) demonstrate that the Union violated its duty of fair representation when it failed to file, process, or otherwise pursue any grievance from Plaintiffs." (TAC ¶52.) Each of these conclusions is wholly conclusory and merely parrots the elements of the claim without pleading actual facts to support any of the elements. Against the *Twombly/Iqbal* plausibility standard, these allegations are insufficient to state a claim for breach of the duty of fair representation.

The only allegations that is not entirely conclusory is Plaintiff May's claim that the "refus[al] to a grievance or otherwise investigate the matter" was "without any legitimate basis[.]" (TAC ¶42.) However, while slightly more specific than his other allegations, it is insufficient to raise a reasonable inference that such conduct constituted a breach of the Unions' duty of fair representation. As Plaintiff May concedes, the Shop Steward Mulinsky and "other Union representatives" believed that the "members had no claim because: (1) the employees did not work a day in 2018; and/or (2) the employer did not have to pay such benefits until the end of the 2018 calendar year." (TAC ¶40.) These allegations support an inference that Mulinsky and the other Union representatives were not acting arbitrarily or in bad faith—rather, they had a reason to believe that Plaintiff May did not have a viable claim for vacation pay. Thus, Plaintiff May's own Complaint negates a finding that the Union's conduct was without a rational basis or explanation

or "so far outside a 'wide range of reasonableness' as to be irrational." *Marquez*, 525 U.S. at 46. Accordingly, for all the aforementioned reasons, the Court **GRANTS** the Motion to Dismiss because Plaintiff May has failed to plead allegations to support the Section 301 claim.[2]

### C. Leave to Amend

Plaintiffs also ask that, if Defendant's motion to dismiss is granted, they be given leave to amend their Complaint. (Opp. at 23.) "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The TAC's deficiencies here are curable, as they lie in the TAC's lack of factual assertions and specificity; as such, amendment would not necessarily be futile. Accordingly, Plaintiffs may file a motion to amend the complaint within 14 days of the date of the Order accompanying this Opinion.

### IV. CONCLUSION

For the reasons detailed above, Defendant's motion to dismiss is granted without prejudice, and Plaintiffs may seek leave to file an amended complaint. An accompanying Order shall issue.

Dated: 3/18/2021                                             s/ Robert B. Kugler
                                                                            ROBERT B. KUGLER
                                                                            United States District Judge

---

[2] Because the Court dismisses the claim on this ground, it does not address Defendant's arguments regarding whether Elk Pipeline breached the CBA.